**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JICARILLA APACHE NATION,

     Plaintiff,

        v.

U.S. DEPARTMENT OF THE INTERIOR, ET AL.,

     Defendants,

and

MERIT ENERGY COMPANY

     Defendant-Intervenor

Civil Action No 10-2052 (JDB)

## MEMORANDUM OPINION

Plaintiff Jicarilla Apache Nation ("Jicarilla") brings this action against the United States Department of the Interior and Ken Salazar, Secretary of the Interior (collectively, "Department" or "Interior").  Jicarilla seeks to set aside a decision by the Interior Board of Land Appeals ("IBLA") on the ground that the IBLA's decision breached defendants' fiduciary duty to the tribe.  See Merit Energy Co. v. Minerals Mgmt. Serv., 172 IBLA 137 (Aug. 3, 2007). Jicarilla sought review of that decision in this Court pursuant to the Administrative Procedure Act ("APA"). The Court previously concluded that Jicarilla's challenge was not yet ripe, given the IBLA's remand to an administrative law judge in the Office of Hearings and Appeals ("OAH").  See Jicarilla Apache Nation v. U.S. Dep't of Interior, 648 F. Supp. 2d 140, 146-48 (D.D.C. 2009).

The parties agree that there is now a final agency action to review.  See Tr. 5:14-15. Currently before the Court are Jicarilla's, defendants', and defendant-intervenor Merit Energy Company's ("Merit") motions for summary judgment.  For the reasons discussed below, Merit's and defendants' motions for summary judgment will be granted, and Jicarilla's motion for summary judgment will be denied.

## BACKGROUND

Most of the facts have been fully detailed in this Court's opinion in the prior case, see generally Jicarilla Apache Nation, 648 F. Supp. 2d at 141-43.  Jicarilla is a federally recognized Indian tribe with a reservation in northwest New Mexico.  Compl. ¶ 2.  Under the Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g, Jicarilla is the lessor for various oil and gas mining leases with Merit.  Id. The tribe is entitled to royalties for oil and gas produced under these leases, which are calculated using certain pricing and accounting methods. Id. ¶ 8.  During an audit, the Minerals Management Service ("MMS")[1] determined that Merit's royalties for oil and gas production under its leases with Jicarilla were miscalculated, and that Merit had failed to report gas sales as processed.  Id.

On February 16, 1999, MMS issued an Order to Perform ("OTP") to Merit directing it to recalculate royalties on its leases with Jicarilla and to pay any additional amounts due.  Id. ¶ 10; OTP, Amended AR 7676.  The OTP stated that Merit could

---

[1] The Secretary of the Interior has delegated management of royalties generated by federal and Indian leases to MMS (now reorganized into the Office of Natural Resources Revenue); the Assistant Secretary for Land and Minerals Management; the Assistant Secretary for Indian Affairs; and the IBLA.

appeal it pursuant to the regulations in 30 C.F.R. Part 290[2] "within 30 days from service of the order."  Compl. ¶¶ 10-11; OTP, Amended AR 7676.  Merit did not respond to or appeal the OTP.  Compl. ¶ 12.  On August 19, 1999, MMS then issued a Notice of Noncompliance ("Notice or "NON") and assessed civil penalties against Merit for failing to comply with the OTP. Compl. ¶ 13; Notice, Amended AR 7723-25.  The Notice contained procedures for requesting a hearing before an administrative law judge ("ALJ") in the Office of Hearings and Appeals under 30 C.F.R. Part 241 and a stay of the accrual of penalties under 30 C.F.R. Part 243.[3]

Merit timely requested a hearing on the Notice of Noncompliance.  The parties, including Jicarilla -- which intervened in the administrative proceedings -- disagreed about the proper scope of that hearing.  Merit claimed that it should be permitted to contest its underlying liability in the hearing on the NON, even though it had failed to appeal the OTP pursuant to 30 C.F.R. Part 290.  Merit also argued that service of the OTP was invalid.  The ALJ rejected both contentions and, on November 16, 2001, ruled that he lacked jurisdiction to consider Merit's challenge to its underlying liability in the Part 241 hearing.  Order, Amended AR 3598-3602.  In July 2003, a hearing was held on the remaining service issue, and the ALJ issued a decision on May 27, 2004 concluding

---

[2]  As of October 4, 2010, 30 C.F.R. Parts 241, 243, and 290 have been recodified as 30 C.F.R. Parts 1241, 1243, and 1290 with no substantive change relevant to the IBLA's interpretation.  See Compl. ¶ 30 n. 2.  For the sake of clarity and consistency, the Court will continue to refer to the previously codified citations.

[3]  Section 109 of the Federal Oil and Gas Royalty Management Act of 1982 ("FOGRMA"), codified at 30 U.S.C. § 1719, provides the statutory basis for issuing the Notice of Noncompliance.  FOGRMA's implementing regulations at 30 C.F.R. Part 241, titled "Penalties," provides for a hearing on the Notice of Noncompliance with an ALJ from the Department's Hearings Division, Office of Hearings and Appeals, with review by the IBLA. Part 243 sets forth certain bonding and surety requirements.

that the OTP had been properly served on Merit.  Compl. ¶¶ 17-18; <u>Merit Energy Co.</u>, 172 IBLA at 142.

Merit appealed to the IBLA. Compl. ¶ 19.  Acting on behalf of the Department, the IBLA upheld the ALJ's decision on the issue of service, but reversed on the jurisdictional question and remanded the case to the ALJ for further proceedings. <u>See Merit Energy Co.</u>, 172 IBLA at 156; Compl. ¶¶ 22-23. Jicarilla sought judicial review of the IBLA's decision on jurisdiction.   But given the IBLA's remand, the Court concluded that the challenge was not yet ripe and dismissed the case. <u>See Jicarilla Apache Nation</u>, 648 F. Supp. 2d at 146-48.

On remand, the ALJ then stayed the case pending proceedings in another action, <u>Jicarilla Apache Nation v. U.S. Dep't of the Interior</u>, No. 07-cv-803 (D.D.C.), known as the "Vastar" litigation. "Vastar" concerned the validity of the major portion pricing methodology for calculating royalty payments due under Jicarilla's leases.[4]  The OTP issued to Merit had directed Merit to use the contested methodology; hence, its validity was relevant to and potentially dispositive of the issues here.  Compl. ¶ 26; 2010 AR 381-85.  Ultimately, the methodology was found to be invalid for the leases between

---

[4] "Vastar" involved several consolidated cases at the administrative level.  The Department had invalidated the major portion pricing methodology used for calculating royalties on Jicarilla leases from January 1984 to June 1995. 2010 AR 339-350.  That decision was initially upheld by the district court, <u>see Jicarilla Apache Nation v. U.S. Dep't of Interior</u>, 604 F. Supp. 2d 139**,** 144 (D.D.C. 2009), but the D.C. Circuit reversed, finding that the Department's decision was arbitrary and capricious.  <u>Jicarilla Apache Nation v. U.S. Dep't of Interior</u>, 613 F.3d 1112, 1121-22 (D.C. Cir. 2010).  Because Jicarilla only contested leases from the January 1984 to February 1988 timeframe, it had waived its challenge with respect to other time periods.  <u>Id.</u> at 1118. Therefore, the Department's decision invalidating the major portion pricing methodology continued to apply to Jicarilla's leases with Merit, which spanned from March 1993 to September 1995. Compl. ¶ 7.

Merit and Jicarilla.[5]  The ALJ therefore vacated those aspects of the OTP and the Notice

of Noncompliance, concluded that all other issues had been resolved, and returned the

case to the ONRR on November 16, 2010. Compl. ¶¶ 27-28. All parties agree that this

remand constituted "final agency action" and that the IBLA's decision in Merit Energy

Co. v. Minerals Management Service, 172 IBLA 137 (2007), is now ripe for review.

Compl. ¶ 28; Mots. Hr'g Tr. 5:14-15, June 8, 2012.

 Jicarilla has again brought suit in this Court.  It contends that the IBLA's decision

interpreting the scope of the Notice of Noncompliance hearing must be set aside because

it is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with

law, in violation of the APA, 5 U.S.C. § 706. Compl. ¶¶ 29-35.  Jicarilla also makes a

breach of trust claim.  Id. ¶¶ 36-39.  Merit has subsequently intervened and all parties

have now filed motions for summary judgment.

**ANALYSIS**

**I. APA Claim**

 The central issue in this case is whether the IBLA erred in finding that the scope

of a Notice of Noncompliance hearing could include arguments as to a party's underlying

liability.  Because the Court has determined that the IBLA's interpretation was based on a

reasonable construction of FOGRMA, and the regulations in Parts 241 and 290,

deference to the IBLA's interpretation is warranted and the IBLA's decision will be

upheld.

**A. Standard of Review**

---

[5] The Department, however, maintains that the case is not mooted, nor has any other
party made such a claim before this Court.  Tr. 5:4-6:2.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.  In a case involving review of a final agency action under the APA, however, the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record. See Roberts v. United States, --- F. Supp. 2d ----, 2012 WL 975085, at *4 (D.D.C. Mar. 23, 2012); Kaiser Found. Hosps. v. Sebelius, 828 F. Supp. 2d 193, 197-98 (D.D.C. 2011). Instead, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Kaiser Found. Hosps., 828 F. Supp. 2d at 198 (internal quotations and citations omitted).  Pursuant to the APA, a reviewing court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  This standard of review is "narrow" and "a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  But, the court must be satisfied that the agency has "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006).

In reviewing an agency's interpretation of the laws it administers, courts have applied the principles set out in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Statutes are analyzed applying customary rules of statutory interpretation.  Id. at 843.  If Congress' intent is clear with respect to the specific issue, then a court gives effect to that unambiguously expressed intent and the

analysis ends there. Id.  However, if a statute is "silent or ambiguous with respect to the specific issue, the question for the Court is whether the agency's answer is based on a permissible construction of the statute."  Id.

Moreover, an agency's construction of its own regulations is entitled to "substantial deference."  St. Luke's Hosp. v. Sebelius, 611 F.3d 900, 904 (D.C. Cir. 2010) (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)) and is accorded "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Id.; see also Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945); Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 150, 150-51 (1991); Auer v. Robbins, 519 U.S. 452, 461 (1997).  When a statute gives express authority to an agency to issue rules and regulations, they are given "controlling weight" unless "arbitrary, capricious, or manifestly contrary to statute."  Menkes v. U.S. Dep't of Homeland Sec., 637 F.3d 319, 330 (D.C. Cir. 2011) (quoting Chevron, 467 U.S. at 843-44).[6]  The court's task is "not to decide which among competing interpretations best serves the regulatory purpose." Thomas Jefferson Univ., 512 U.S. at 512.  Instead, deference is especially appropriate when "a complex and highly technical regulatory program" is concerned, requiring "significant expertise" and the "exercise of judgment grounded in policy concerns." Id. (citing  Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991)).  However, a court will not defer to an agency's "post hoc rationalizations," as indicated by an agency's prior conflicting interpretations of its

---

[6] In addition, "[i]t does not matter" whether the agency's interpretation of regulatory language came in the form of a judgment rendered in an adjudication rather than through rulemaking.  In both instances, the agency's interpretation of its regulations should be accorded controlling weight. Menkes, 637 F.3d at 331.

regulations.  Kaiser Found. Hosps., 828 F. Supp. 2d at 199 (citing Akzo Nobel Salt, Inc.
v. Fed. Mine Safety & Health Review Comm'n, 212 F.3d 1301, 1304-05 (D.C. Cir.
2000)).  Instead, "if an agency's interpretation of a regulation shifts such that the agency
is treating like situations differently without sufficient reason, the court may reject the
agency's interpretation as arbitrary."  Id. (citing Cnty. of Los Angeles v. Shalala, 192
F.3d 1005, 1022 (D.C. Cir. 1999)).

**B.      Statutory Regime and IBLA Decision**

The Federal Oil and Gas Royalty Management Act of 1982 ("FOGRMA") was
enacted to improve the "archaic and inadequate" system of accounting for royalty
payments due from oil and gas leases on federal and Indian lands. 30 U.S.C. §
1701(a)(2)-(3).  The statute directed the Secretary of the Interior to implement and
maintain a royalty management system for such leases, and required "the development of
enforcement practices that ensure the prompt and proper collection and disbursement of
oil and gas revenues" owed to the United States and Indian lessors. Id. § 1701(b).  It gave
express authority to the Secretary of the Interior to issue rules and regulations under the
Act.  Id. § 1751(a).  FOGRMA also provides that "[n]o penalty . . . shall be assessed
until the person charged with a violation has been given the opportunity for a hearing on
the record." Id. § 1719(e).

In 1984, final rules implementing FOGRMA were promulgated.  These included
provisions contained in 30 C.F.R. Part 241 for the issuance of a Notice of
Noncompliance, and for the assessment of civil penalties under the Act and other related
statutes.  See 30 C.F.R. § 241.51(a) ("If we believe that you have not followed any
requirement of a statute, regulation, order, or terms of a lease . . . we may send you a

Notice of Noncompliance telling you what the violation is and what you need to do to correct it . . . ."). Pursuant to FOGRMA and Part 241, a party receiving a Notice of Noncompliance is entitled to request a hearing on the record on that Notice. 30 U.S.C. § 1719(e); 30 C.F.R. §241.54 ("You may request a hearing on the record on a Notice of Noncompliance by filing a request within 30 days of the date you received the Notice. You may do this regardless of whether you correct the violations identified in the Notice of Noncompliance.")

Separately, 30 C.F.R. Part 290, which was promulgated prior to FOGRMA, sets forth appeals procedures for MMS orders related to certain reporting requirements and royalty payments due under federally-administered leases, including leases on Indian tribal lands. Subpart B of 30 C.F.R. Part 290 is titled "Appeals" and applies to MMS orders "concerning reporting" and "the payment of royalties and other payments due under leases subject to this subpart." 30 C.F.R. § 290.100. Interior agrees that an "Order to Perform" would constitute an appealable order under Part 290. Merit Energy, 172 IBLA at 144 ("We begin by acknowledging that Merit could have appealed the OTP to the Commissioner of Indian Affairs under Part 290, that it did not, and that, as a consequence, it could not thereafter pursue an appeal before the Commissioner.").

However, examining the language of FOGRMA and the regulatory language of Parts 241 and 290, the IBLA found that nothing in either the statute or the regulations prohibited the ALJ from ruling on Merit's challenge to its underlying liability during the NON hearing. The IBLA reasoned:

> The purpose of a hearing on the record of a NON is to allow the party to challenge its "underlying liability," which is the failure to undertake the actions set forth in the OTP. . . . Therefore, Merit's right to contest its underlying liability necessarily encompasses the right to defend against

and even defeat the NON . . . including affirmative defenses based on
flaws in the service or basis and substance of the OTP that might excuse
compliance. We find nothing in FOGRMA or the regulations that provides
or suggests that the scope of a hearing on the record of a NON under Part
241 can be cut off or curtailed by the failure to pursue an appeal under
Part 290. . . . The two appeal routes are separate procedures, and an appeal
under Part 290 is not a prerequisite to a hearing on the record under Part
241.

Id. at 146.  Although the IBLA acknowledged that Merit could have appealed the OTP

using the procedures in Part 290, it concluded that Merit's failure to do so "does not

mean that Merit thereby lost the right to challenge [its underlying liability] in a hearing

on the record pursuant to Part 241." Id. at 144-45.  To find otherwise, the IBLA reasoned,

"would render the hearing on the record afforded by FOGRMA a mere formality empty

of substance or meaning."  Id. at 145.

## C.      Deference

As an initial matter, the Court must decide whether Interior's decision is the type

of agency action entitled to deference.  "Generally, the answer is yes so long as the

statutes and regulations in question are ambiguous and the [agency's] interpretations are

reasonable," AKM LLC v. Sec'y of Labor, 675 F.3d 752, 754 (D.C. Cir. 2012) (citing

Chevron, 467 U.S. at 843).[7]

---

[7] Although a concurring opinion in AKM expressed reservation in giving deference to an
agency's interpretation of its own jurisdiction, see 675 F.3d at 766 (Brown, J.,
concurring), this Circuit has not yet resolved the issue. Id. (collecting and comparing
cases).  However, even AKM does not foreclose deferential treatment to an agency's
interpretation when a highly technical regulatory regime is involved.  Id. at 765
(discussing deference accorded to the Treasury Department in interpreting the
applicability of a statute of limitations in Intermountain Ins. Serv. of Vail v. Comm'r, 650
F.3d 691, 707 (D.C. Cir. 2011), vacated on other grounds by Intermountain Ins. Serv. of
Vail, LLC v. C.I.R., 132 S. Ct. 2120 (2012).  Moreover, here there is no dispute that
Interior has jurisdiction over appeals involving a party's underlying liability for royalty
payments, whether they proceed under Part 241 or under Part 290. And, all parties agree
that Interior's decision here is the type of decision that would ordinarily be accorded
deference.  See Jicarilla's MSJ at 7; Merit's MSJ at 12; Interior's MSJ at 7.

Deference to Interior's interpretation of the scope of the hearing under FOGRMA and Part 241 is appropriate because Congress expressly delegated authority to the Department to issue rules and regulations to administer FOGRMA. See 30 U.S.C. § 1751(a) (conferring authority to the Secretary of the Interior under FOGRMA). Because FOGRMA is itself silent on the issue of the hearing's scope, Interior's interpretation of that scope should be given "controlling weight" unless "arbitrary, capricious, or manifestly contrary to statute." Menkes, 637 F.3d at 330 (quoting Chevron, 467 U.S. at 843-44).[8]

Moreover, the royalties program for federal and Indian oil and gas leases is "a complex and highly technical regulatory program" which requires "significant expertise" and the "exercise of judgment grounded in policy concerns" by the Department. See Thomas Jefferson Univ., 512 U.S. at 512 (citing Pauley, 501 U.S. at 697; Amoco Prod. Co. v. Watson, 410 F.3d 722, 725 & 728 (D.C. Cir. 2005) (deferring to the Department of Interior's interpretation of the Mineral Leasing Act and its implementing regulations because "the relationship between the government and those who extract gas from the government's land is regulated pursuant to an elaborate array of statutes and rules"). The administration of such programs, including how challenges to violations can be presented and resolved, has been specifically entrusted to Interior, and its interpretation of the appeals procedures under Part 241 and 290 is entitled to deference. See Union of Concerned Scientists v. U.S. Nuclear Regulatory Comm'n, 920 F.2d 50, 53-54 (D.C. Cir. 1990) (finding that increased deference was due to NRC procedural rules because of the

---

[8] In United States v. Home Concrete & Supply, LLC, 566 U.S. ----, 132 S. Ct. 1836, 1844 (2012), a plurality opinion rejected the Treasury Department's deference argument for its regulations because the Court had previously construed the same statute as not providing the agency with a "gap to fill". That is not the situation here.

"unique degree to which broad responsibility is reposed in the [Commission]" and that "of course" a court is "obliged to defer to the operating procedures employed by an agency when the governing statute requires only that a 'hearing' be held" and when the statute "nowhere describes the content of a hearing or prescribes the manner in which this 'hearing' is to be run") (emphasis in original) (internal quotations and citations omitted). In addition, the parties do not dispute the issue, but instead agree that, as a general matter, decisions of this kind by the Department are entitled to deference.  See Jicarilla's MSJ at 7; Merit's MSJ at 12; Interior's MSJ at 7.  Hence, the Court has ample reason to consider the IBLA's interpretation of the hearing's scope through a deferential lens, and therefore turns now to consideration of the text of the statute and the regulatory language.

FOGRMA does not explicitly address the specific question here -- that is, whether Merit should have been allowed to challenge its underlying liability during the hearing on the Notice of Noncompliance.  Therefore, the Court next considers whether IBLA's answer "is based on a permissible construction" of FOGRMA.  Chevron, 467 U.S. at 843. Certainly, it is.  The IBLA reasonably concluded that nothing in the statute precludes the scope of a Notice of Noncompliance hearing from encompassing a challenge to a party's underlying liability.  Merit Energy Co., 172 IBLA at 145.  Moreover, the IBLA reasoned that allowing a party to raise its full affirmative defenses -- i.e., that it was not subject to any underlying liability at all -- was consistent with FOGRMA's mandate that parties have a right to a hearing before penalties based on a party's underlying violations can be imposed.  Id.; see also 30 U.S.C. § 1719(e).

The IBLA's interpretation of the regulations in Parts 241 and 290 is entitled to substantial deference.  The conclusion that Part 241 does not require a party to first

pursue an appeal under Part 290 was not plainly erroneous or inconsistent with the regulatory language, nor was it manifestly contrary to FOGRMA's statutory intent. The IBLA pointed to language in Part 241 indicating that it "applies to any situation in which MMS believes that a party has 'not followed any requirement of a statute, regulation, order, or terms of a lease,'" Merit Energy Co., 172 IBLA at 144; see also 30 C.F.R. § 241.51(a). Part 241 also contains language that was reasonably interpreted by the IBLA as allowing a party to challenge its underlying liability as part of the Notice of Noncompliance hearing. For example, regulatory provisions in Part 241 state the following with respect to whether a party can seek a hearing on the penalty amount without first requesting a hearing on the Notice of Noncompliance: "If you did not request a hearing on the record on the Notice of Noncompliance under § 241.54, you may not contest your *underlying liability* for civil penalties." 30 C.F.R. §§ 241.56, 241.64; Merit Energy Co., 172 IBLA at 149-50 (emphasis added). The IBLA concluded that these provisions can logically be read to suggest that if a party did request a hearing on the Notice of Noncompliance, then a party can also challenge its underlying liability as part of that hearing. This interpretation is consistent with FOGRMA and the language of the regulations themselves, and the IBLA reasonably concluded as much.

Jicarilla's arguments to the contrary are all unavailing. Jicarilla claims that the IBLA's decision nullifies the appeals procedure under Part 290, because a party can bypass that process and instead opt for the appeals process under Part 241. Jicarilla MSJ at 11. The tribe further argues that the IBLA's construction of Part 241 may lead to inconsistent decisions on royalty determinations, because lessees can now pick and choose which process they want to use. Id. at 18.

Jicarilla's contention that this procedural regime enhances the potential for "forum shopping" has some force, as Merit itself concedes. Tr. 45:13-46:24 & 47:17-22. But the IBLA, in concluding that Parts 241 and 290 provided for two separate appeals processes, considered these arguments at the administrative level, and articulated why they were unavailing in foreclosing a party's ability to raise its liability defenses at the Notice of Noncompliance hearing. The IBLA's decision discussed how Interior had initially proposed rules to amend and consolidate the procedures in Parts 241 and 290. See Merit Energy Co., 172 IBLA at 147-50; see also 62 Fed. Reg. 68244 (Oct. 28, 1996). However, based on certain comments received and logistical problems, the Department ultimately left the existing (and separate) appeals processes in place. Id.; see also Tr. 46:3-23. Considering this history, the IBLA nevertheless reasoned that barring a party from raising all its affirmative defenses at the hearing "would render the hearing on the record afforded by FOGRMA a mere formality empty of substance or meaning." Merit Energy Co., 172 IBLA at 145. That interpretation, notwithstanding legitimate concerns regarding dual appeals processes, represented a "reasonable accommodation" of policies that were committed to the Department's care. See Chevron, 467 U.S. at 844-45.

Jicarilla also asserts, unconvincingly, that IBLA's interpretation conflicts with FOGRMA and the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 because it allows for decentralized and delayed royalty collections in contravention of those statutes. See Jicarilla's MSJ at 16. However, as the IBLA states and Jicarilla itself concedes, the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 ("RSFA"), Pub. L. No. 104-185, 110 Stat. 1700, is inapplicable to Indian leases. See RSFA, Pub. L. No. 104-185, § 9, 110 Stat. 1717 ("The amendments made by this Act . . .

shall not apply with respect to Indian lands."); Merit Energy Co., 172 IBLA at 146 ("This

appeal does not present a RSFA question."); Tr. 9:10-11.  Instead, the tribe feebly claims

that "the IBLA decision cannot escape judicial scrutiny simply because the RSFA does

not apply." Jicarilla's Reply at 7.  But, there is no reason for this Court to analyze how

the IBLA's decision might conflict with irrelevant requirements under an inapplicable

statute.

Nor does Jicarilla explain how the IBLA's decision defeats a policy of

"centralizing royalty determinations."  Indeed, the parties all agree that decentralization

was never an argument that was raised at the administrative level; in turn, it was never

considered by the IBLA.  Tr. 13:15-14:24 & 29:6-16; see also Motor Vehicle Mfrs.

Ass'n, 463 U.S. at 43 ("[A] court is not to substitute its judgment for that of the

agency."); Kaiser Found. Hosps., 828 F. Supp. 2d at 198 (judicial review limited to the

administrative record before the agency).

Finally, Jicarilla claims that IBLA's interpretation of Parts 290 and 241

contravenes the IBLA's prior precedents, which have applied the doctrine of

administrative finality to bar untimely challenges to royalty determinations.  This

argument, too, must be rejected.  At the administrative stage, MMS initially argued

before the ALJ that the doctrine of administrative finality foreclosed Merit's attempt to

challenge the OTP during a subsequent hearing on the Notice of Noncompliance.  See,

e.g., Amended AR 2741-44. Although MMS is now bound by the IBLA's interpretation,

Jicarilla has picked up on that argument in claiming that the IBLA's decision is arbitrary

and capricious because the IBLA ignored its prior precedents.  Jicarilla cites two prior

IBLA decisions, Oryx Energy Co. v. MMS, 137 IBLA 177 (1996), and Santa Fe Energy

Co. v. MMS, 110 IBLA 209 (1989), where the IBLA had applied this doctrine to bar

consideration of royalty determinations in later proceedings because of the failure to

challenge those determinations in the first instance.

      The IBLA did not explicitly address the applicability of the administrative finality

doctrine, but it acknowledged that the parties had briefed the issue to the ALJ.  Merit

Energy Co., 172 IBLA at 141.  In those filings, however, MMS had alternatively argued

that, even if the administrative finality doctrine was inapplicable to this case, the ALJ

lacked jurisdiction to consider Merit's liability. Amended AR 2737-41.  The ALJ focused

on this alternative argument and agreed with MMS that there was no jurisdiction to

consider the validity of the OTP.  Merit Energy Co., 172 IBLA at 141.  The IBLA, in

concluding that the ALJ did have jurisdiction to consider the liability arguments under

Part 241, found that the two appeals procedures under Parts 241 and 290 were separate

and distinct.  The IBLA's focus on the jurisdictional issue and its corresponding position

that the doctrine of administrative finality was inapplicable can "reasonably be

discerned" in its decision.  See Kaiser Found. Hosps., 828 F. Supp. 2d at 198 ("[A]

decision that is not fully explained may be upheld 'if the agency's path may reasonably

be discerned.'") (citing and quoting Bowman Transp. Inc. v. Arkansas-Best Freight Sys.,

Inc., 419 U.S. 281, 285-86 (1974)).  Accordingly, IBLA did not ignore its prior

precedents applying the administrative finality doctrine because that doctrine simply did

not apply.  As the IBLA reasoned, the failure to file an appeal under Part 290 had no

effect on the request for a hearing under Part 241.

      Moreover, neither Oryx nor Santa Fe assist Jicarilla in demonstrating that the

IBLA ignored its prior precedents.  Those cases are inapposite because the hearing

procedures under Part 241 were never implicated.  Both <u>Oryx</u> and <u>Santa Fe</u> involved party challenges to interest assessments incurred by the late payment of royalties.  During the appeal of those interest charges, which proceeded solely under Part 290, the parties had attempted to attack the royalty calculations themselves.  Oryx, for example, claimed that MMS should have offset its underpayments of royalties with overpayments it had made on other federal leases.  <u>See Oryx</u>, 137 IBLA at 181.  The IBLA, rejecting that attempt to "challenge the underlying royalty assessment via the proceeding disputing the demand for late payment charge," applied the doctrine of administrative finality because Oryx's chance to contest the royalty determination "had long since passed."  <u>Id.</u> at 181-82.  Similarly, the IBLA rejected Santa Fe's attempt to challenge its royalty payments during its appeal of the resulting interest assessments.  <u>See Santa Fe</u>, 110 IBLA at 210. There, too, the IBLA applied the doctrine of administrative finality to bar consideration of these arguments.  <u>Id.</u>

In both these cases, the IBLA determined that the doctrine of administrative finality precluded parties from subsequently raising issues regarding their royalty determinations at the interest-assessment stage, when they otherwise had an opportunity to challenge such determinations at an earlier point in the same appeals process.  In contrast, because the issue here involves the scope of a hearing pursued under a *different* appeals procedure, Jicarilla's argument that the IBLA ignored its prior precedents on applying the administrative finality doctrine cannot defeat the deference accorded to the IBLA's reasonable interpretation of its regulatory provisions.

## II.        Breach of Fiduciary Duty

Jicarilla also claims that even if IBLA's interpretations of Parts 241 and 290 were reasonable, the Department was still obliged to choose the construction of those regulations that satisfied the best interests of the tribe.  Under Jicarilla's view, an agency would always have an obligation to construe such regulations and statutes in a tribe's favor, even if they would apply differently to another, non-tribal party.  As the Court indicated at oral argument, Jicarilla's position is incredibly broad.  It is also unsupportable.

Jicarilla relies heavily on language in <u>Cobell v. Norton</u>, 240 F.3d 1081 (D.C. Cir. 2001) to support its claim.  <u>Cobell</u> was a class action suit brought by beneficiaries of trust accounts who had claimed that Interior breached its fiduciary duties by mismanaging their funds.  Specifically, Jicarilla points to the D.C. Circuit's instruction that "'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'"  <u>Id.</u> at 1101 (quoting <u>Montana v. Blackfeet Tribe of Indians</u>, 471 U.S. 759, 766 (1985)).  According to Jicarilla, in instances where "the Secretary is obligated to act as a fiduciary . . . [,] his actions must not merely meet the minimal requirements of administrative law, but must also pass scrutiny under the more stringent standards demanded of a fiduciary."  <u>Id.</u> at 1099.

This case, however, is distinguishable from <u>Cobell</u>, where the agency actions at issue pertained exclusively to Indian programs – specifically the management of Individual Indian Money trust accounts.  <u>See</u> 240 F.3d at 1081.  In contrast, FOGRMA and the relevant regulations at issue in this case apply to *all* federal leases for oil and gas. <u>See</u> 30 U.S.C. § 1701. Although FOGRMA refers to the government's trust obligations to

18

Indian tribes, 30 U.S.C. § 1701(a)(4), the statute also states that the Secretary should enforce its regulations "effectively and *uniformly*." 30 U.S.C. § 1701(a)(1) (emphasis added). Indeed, <u>Cobell</u> itself provides that "[d]espite the imposition of fiduciary duties, federal officials retain a substantial amount of discretion to order their priorities." 240 F.3d at 1099.[9]

Here, Jicarilla argues for a favorable construction of regulations that are not limited to Indian tribes, but rather are applicable to federal leases generally. But it simply cannot follow that the IBLA must construe procedural regulations to benefit Jicarilla, but then either bind all other parties to that same construction solely because a tribe, by happenstance, was the implicated party, or take different approaches in construing its own regulations depending on the nature of the party.[10] In any event, having concluded that IBLA's interpretation of FOGRMA and its implementing regulations was reasonable, the Court concludes that there was no resulting breach of defendants' duty to Jicarilla.

---

[9] <u>United States v. Jicarilla Apache Nation</u>, -- U.S. ----, 131 S. Ct. 2313 (2011), also suggests that the government's fiduciary duty to Indian tribes is more limited than Jicarilla urges. There, Jicarilla relied on an argument that the government's trust obligations to the tribe entitled the tribe to privileged documents. In a plurality opinion, the Supreme Court rejected this contention, and ruled that the fiduciary exception to the attorney-client privilege did not apply to the government's administration of Indian trusts. <u>Id.</u> at 2330.

[10] And, as Merit observed at oral argument, Jicarilla's proffered position could lead to greater unpredictability between contracting parties where Indian leases are involved. This, in turn, could deter parties from entering into such leases with Indian tribes. This result would hardly be in a tribe's "best interests," which underscores the problem with Jicarilla's position.

**CONCLUSION**

For the reasons explained above, the Court will deny Jicarilla's motion for

summary judgment and grant Interior's and Merit's cross-motions for summary

judgment.  A separate order accompanies this Memorandum Opinion.


**SO ORDERED.**


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  September 26, 2012